IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION


SOUTHEAST SUPPLY HEADER, LLC                                    PLAINTIFF

v.                                          CIVIL ACTION NO.  2:07cv216-KS-MTP

47.75 ACRES IN COVINGTON COUNTY,
MISSISSIPPI; SCOTT RANDALL THRASH,
HELEN G. THRASH; and unknown persons
having interests                                              DEFENDANTS


## ORDER

This cause is before the Court on Plaintiff's motion *in limine* to exclude certain evidence and testimony at trial [# 29].  After considering the motion, the presentation of briefs, the Court hearing oral argument from counsel for both sides, and the Court requesting a clarification from the defendants as to the extent and subject matter of the landowners' testimony regarding valuation, and the Court being fully advised in the premises and considering the applicable case and statutory law, does hereby find as follows:


### I. FACTUAL BACKGROUND

This case arises out of a company's attempt to condemn an easement over 44.75 acres in Covington County for the construction of a natural gas pipeline.  After prevailing on their preliminary injunction to enter the property and begin construction, Southeastern Supply Header, LLC ("SESH") now seeks to value the property taken for payment of just compensation.  The

landowners, Scott Randall Thrash and Helen G. Thrash ("the Thrashs"), have challenged the value assessed by SESH, and are proceeding to trial on the sole remaining issue of valuation.

To support their alleged value of the property taken, the Thrashs plan to offer the testimony of Scott Randall Thrash as the owner of the property.  The Thrashes anticipate that Mr. Thrash will testify that each of the following factors associated with the natural gas pipeline devalue his land.  These factors identified include: (1) a loss of privacy; (2) a loss of control; (3) HUD regulations that require additional documentation for government-guaranteed loans; (4) development cost; (5) noise, activity, and lack of access; (6) loss of aesthetics; (7) interference with timber use; (8) interference with prospective mineral mining; and (9) safety concerns.  Mr. Thrash plans to testify that the above factors combine to devalue the remainder of his land, upon which the Defendant seeks no easement, by a factor of 10%.  He intends to use no method of valuation or market analysis to support his final figure.

SESH has subsequently moved *in limine* for the exclusion of certain portions of Mr. Thrash's testimony.  The Thrashs have responded by arguing that the Federal Rules of Evidence permit a landowner wide latitude in testifying to the value of their land, and that Mr. Thrash's planned testimony is within past precedent for landowner opinion testimony.

## II. STANDARD OF REVIEW

The Federal Rules of Evidence permit a landowner to testify as an expert as to the value of their land. *See* Fed. R. Evid. 702 advisory committee note ("within the scope of the rule are not only experts in the strictest sense of the word...but also the large group sometimes called 'skilled' witnesses, such as...landowners testifying to land values."); *see also Certain*

2

*Underwriters at Lloyd's, London v. Coastal Builders, Inc.*, 2007 WL 2826880 at *2 (S.D. Miss. Sep. 25, 2007).  Unlike other expert witnesses, "the opinion of a landowner as to the value of his land is admissible without further qualification." *U.S. v. 329.73 Acres of Land*, 666 F.2d 281, 284 (5th Cir. 1981) (affirming verdict based on landowner testimony even though testimony "was not based on any accepted method of valuation.").  The purpose of the rule is that an owner "is deemed to have sufficient knowledge of the price paid, the rents and other income received, and the possibilities of the land for use, to render an opinion as to the value of the land." *See United States v. 68.94 Acres of Land*, 918 F.2d 389, 398 (3d Cir. 1990) (*citing* Nichols, The Law of Eminent Domain § 23.03 at 23-30 (1990)).   A landowner's testimony about the value of his land is admissible "despite the fact that he may have been relying to some extent on hearsay." *Lacombe v. A-T-O, Inc*., 679 F.2d 431, 435 (5th Cir. 1982).

Although landowners are permitted to testify because of their special knowledge of the property presumed to arise out of ownership, their resulting valuation "cannot be based on naked conjecture or solely speculative factors." *King v. Ames*, 179 F.3d 370, 376 (5th Cir. 1999).[1]  At a minimum, it must offer specific facts that translate into a reduced market value for the property. *See Gochman v. Oakley*, 44 Fed. Appx. 652, 654 (5th Cir. 2002) (citations omitted) (refusing to permit testimony that, among other shortcomings, "did not even attest to the *market value* of the property...but only as to the amount of its alleged diminution in value...[and] offered no factual support for this assertion.").  The Rule does not permit testimony "where the owner merely

---

[1] As the Tenth Circuit has stated, "[t]here must be a basis for the landowner's valuation, and when the landowner's own testimony shows that his valuation has no probative value, the district court may determine that the landowner's testimony alone is insufficient to support a jury verdict." *U.S. v. 10,031.98 Acres of Land*, 850 F.2d 634, 637 (10th Cir. 1988).

repeats the opinion of an expert witness whose testimony has been previously excluded." *See United States v. 68.94 Acres of Land*, 918 F.2d 389, 398 (3d Cir. 1990) (refusing to permit landowner to testify to opinion of expert whose testimony had been previously excluded by the court for violation of a pre-trial order).

### III. APPLICATION AND ANALYSIS

**1. Loss of Privacy.**

The landowners will be able to testify about their loss of privacy.  It is a stipulated fact that the right-of-way will be perpetual and will require periodic maintenance, testing, and repair, all of which infringe upon the quiet enjoyment of the tract.  The landowners are familiar with the location of the right-of-way and the effect that it will have on their ability to maintain the privacy of their land, and should be permitted to testify about them.

**2. Loss of Control.**

The landowners will be allowed to testify as to the location of their property and its proximity to the Okatoma Creek and U.S. Highway 49.  They will further be allowed to testify that their property has no road access other than their driveway.  They will not, however, be allowed to speculate as to a possible increase in crime after the pipeline is constructed.  But, if they can furnish comparable sales information and establish that the location of the right-of-way results in a reduction of market value, they will also be allowed to testify to that.

**3. HUD Regulations**

The landowners will be allowed to testify that HUD regulations require that additional forms be executed if the property lies within 220 yards of a pipeline easement when the property

4

is used as collateral for a federally-insured loan.  Yet they cannot use this information to speculate as to the effect on a buyer unless it can be justified by comparable sales establishing injury to the market value of the property.

### 4.  Development Costs

The pipeline constitutes a perpetual dominant estate on which the defendants are limited in what they can do.  The landowners will be allowed to testify to this.  The property is designated as recreational, timberland, and rural residential.  However, the landowner will not be allowed to speculate as to the increase in development costs or the subsequent location of utility lines unless they establish some factual basis for the damage.

### 5.  Noise, Activity and Lack of Access

The landowners will be allowed to testify as to any noise, activity, and lack of access to the construction site and over the work easement that results from the taking.  They will further be allowed to testify regarding limitations on their use of the pipeline easement, as well as their knowledge of how the construction process burdens them from their perspective.

### 6.  Aesthetics

The landowners will be able to describe the property before and after the taking and will be able to describe the proposed pipeline markers and need to remove trees.

### 7.  Timber Use

The landowners will be allowed to testify as to the limitations of use of the pipeline property, including any inability of certain equipment to drive across the pipeline right-of-way.

### 8.  Minerals

The property owners will not be permitted to speculate as to mineral harvesting or mining

from the property.  The property's highest and best use is not described by either appraiser as having mineral potential.  Allowing them to testify as to mineral uses would be pure speculation, and improper under the rule.

### 9.  Market Perception of Danger

The landowners will not be allowed to testify as to "fear" as a separate element of damages.  They will also not be allowed to speculate as to explosions or other untoward events, but will be allowed to state that the pipeline is designed to transport a high-pressure, combustible substance.

The landowners, however, will be permitted to present testimony regarding a reduction in market value if this reduction can be backed up by comparable sale data.  Fear does not need to be disregarded if it effects the market price.  The effect on the marketplace is the paramount concern in valuation in this hearing and in other eminent domain proceedings.  As the Ninth Circuit has stated:

> in the final analysis, we are concerned only with market value....We hold, in accord with the law of most states, that if fear of a hazard would affect the price a knowledgeable and prudent buyer would pay to a similarly well-informed seller, diminution in value caused by that fear may be recoverable as part of just compensation.  Our requirement that the fears affect the actions of knowledgeable and prudent sellers and purchasers is dictated by *Olson v. United States*. 292 U.S. 246, 257 (1934), which precludes severance damages for fears based wholly on speculation and conjecture.  It is also consistent with the holdings of most state courts that fears must be "reasonable" or "founded on practical experience" in order to be compensable.

*United States v. 760.807 Acres of Land*, 731 F.2d 1443, 1447 (9th Cir. 1984) (internal citations omitted); *see also United States v. 14.38 Acres of Land*, 80 F.3d 1074 (5th Cir. 1996).

**IV. CONCLUSION**

The Federal Rules of Evidence permit landowners to testify as experts on the value of their land under Rule 702 because of the special knowledge of the property which is presumed to arise out of ownership.  Although the Rule permits a landowner tremendous latitude in testifying, their opinion must remain grounded in facts that translate into reduced market value for the property.  Testimony that has no basis in fact, or is founded on naked conjecture from known factors, remains inadmissible under the Rule.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the motion *in limine* is **granted in part and denied in part**.

SO ORDERED AND ADJUDGED on this, the 27th day of February, 2008.


*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE